**In re the MARRIAGE OF Robert
B. KEYSER, Appellant,**

**and**

**Mary Keyser, Appellee.**

**No. 90CA1273.**

Colorado Court of Appeals,
Div. C.

Oct. 24, 1991.

---

Maurice Reuler and Associates, P.C., Maurice Reuler, Robert W. Becker, Denver, for appellant.

Cox and Mustain–Wood, Mary Jane Truesdell Cox, Littleton, for appellee.

Opinion by Judge VAN CISE *.

In this dissolution of marriage action, Robert B. Keyser, husband, appeals the trial court's valuation of his group medical practice, the division of marital property, and the award of maintenance to the wife, Mary Keyser. We affirm.

The dissolution here occurred after 21 years of marriage. A major asset in the marital estate was the husband's interest in a group medical practice. The husband, an ophthalmologist, has gross annual earnings of between $117,000 and $153,000, and he owns twenty-five percent of the stock in a professional medical corporation. The wife works as a registered nurse and earns approximately $36,000 per year.

Both parties had certified public accountants testify to the value of the husband's interest in the group practice. Wife's expert testified that husband's ownership interest was worth $150,800, including accounts receivable and goodwill. In valuing goodwill, the wife's expert relied upon a nationwide survey of actual sales of ophthalmology practices which found that the goodwill component of such sales averages 60% of the prior year's gross annual billings.

The husband's accountant, who kept the corporate books, testified that husband's stock was worth only $45,000. In arriving at that figure, the husband's expert relied primarily upon the purchase formula fixed in the shareholders' stock redemption agreement. The agreement provided that if a shareholder terminated his association with the practice or died, his stock would be redeemed on the basis of book value.

The agreement therefore excluded any value for goodwill.

The trial court found that the most realistic value for purposes of equitable distribution was the value fixed by the wife's expert. The court awarded all of the corporate stock to the husband. Then, to equalize the distribution, the court awarded the wife 65% of the husband's profit sharing and pension plans, which resulted in both parties receiving marital property of approximately equal value. The court also awarded the wife maintenance of $1,200 per month for a period of ten years or until remarriage.

I.

 Husband contends that it was error to include professional goodwill in the valuation of his medical practice. He argues that the trial court was bound by the terms of the shareholders' buy-sell agreement and long-standing practice of excluding any value for goodwill. We disagree.

 The value of goodwill incident to a professional practice is divisible upon dissolution of a marriage. *In re Marriage of Nichols*, 43 Colo.App. 383, 606 P.2d 1314 (1979). In valuing goodwill, the trial court may properly accept the valuation of one expert over that of another, and, if the court's valuation is reasonable in light of the evidence as a whole, it is binding on review. *In re Marriage of Martin*, 707 P.2d 1035 (Colo.App.1985).

 In a majority of jurisdictions, the price fixed in a partnership or corporate buy-sell agreement is not considered binding for equitable distribution purposes when the other spouse did not consent to or was not otherwise bound by its terms. *Bosserman v. Bosserman*, 9 Va.App. 1, 384 S.E.2d 104 (1989). Instead, it is to be weighed along with other factors in evaluating the asset. *See, e.g., Bettinger v. Bettinger*, —— W.Va. ——, 396 S.E.2d 709 (1990).

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

As stated by the court in *Bosserman, supra:*

> The price established for buy-out purposes ... is often artificial and does not always reflect true value. The very purpose of such provisions or agreements often is to discourage sales by restricting the price which could be realized to less than the actual value to the owner. Further, depending upon the circumstances between the parties and the nature of the restrictions on transfer, whether they merely limit or prohibit marketability to third persons, the true value of the stock may be primarily controlled by factors other than marketability.

*See also Mitchell v. Mitchell,* 152 Ariz. 317, 732 P.2d 208 (1987); *In re Marriage of Slater,* 100 Cal.App.3d 241, 160 Cal.Rptr. 686 (1979).

Some courts hold that buy-sell provisions presumptively control value, *see, e.g., Stern v. Stern,* 66 N.J. 340, 331 A.2d 257 (1975), while a small minority regard the value specified in the agreement as controlling. *See, e.g., Hertz v. Hertz,* 99 N.M. 320, 657 P.2d 1169 (1983).

We believe that the majority rule provides the most reasonable approach. The price, or pricing formula, fixed in a buy-sell agreement is not facially dispositive, but must be considered in light of its provisions and all of the circumstances pertinent to the agreement. *See* Rev.Rul. 59–60, § 8, 1959–1 C.B. 237; *see generally* 2 J.P. McCahey, *Valuation & Distribution of Marital Property,* § 22.08[2][b] (1991).

Accordingly, we hold that the trial court could independently value goodwill notwithstanding that it was excluded from the shareholders' buy-sell agreement.

Husband also argues that the testimony of the wife's expert was flawed because of the expert's reliance on a nationwide survey of ophthalmology practice sales. We perceive no error.

■ Market surveys, industry "rules of thumb," and gross revenue valuation approaches are acceptable methods of valuing a professional business, *see* R. Miles, *Basic Business Appraisal,* 161–164 and 192–193 (1984), and these methods have been recognized by courts in other jurisdictions. *See Mitchell v. Mitchell, supra; Poore v. Poore,* 75 N.C.App. 414, 331 S.E.2d 266 (1985); *Dugan v. Dugan,* 92 N.J. 423, 457 A.2d 1 (1983).

■ The weight to be accorded these valuation techniques is for the trial court's determination, depending upon the court's assessment of the reliability of the data in a particular case. *See* CRE 703; *Stone v. Caroselli,* 653 P.2d 754 (Colo.App.1982).

■ Here, the wife's expert relied not only on the nationwide market survey but also upon his own knowledge of medical practice sales locally. The expert stated that the survey figures were consistent with local sales in which the goodwill component has ranged between 20% to 70% of the prior year's gross billings, depending on the type of practice, the terms of the sale, and various other factors.

Further, in addition to market sales data, the wife's expert considered the husband's age and earnings, the nature and duration of the group medical practice and the amount of its repeat patronage, and the effect of the buy-sell restrictions on the value of husband's stock. *See generally Poore v. Poore, supra.*

We reject the husband's contention that the trial court failed to consider the limitation imposed by the buy-sell restrictions. In response to questions posed by counsel and the trial court directly, the wife's expert discussed the effect of the restrictions in detail, noting, *inter alia,* that the shareholders had discretion either to modify the agreement or to accept a value other than the value fixed in the agreement and that the shareholders also were not bound by a covenant against competition.

We conclude that there is substantial evidence to support the trial court's valuation, and that valuation is therefore affirmed. *In re Marriage of Martin, supra.*

## II.

Husband's challenge to the marital property division was dependent upon the alleged error in valuation of the medical

practice. Since we have affirmed the valuation, and since the parties received marital assets of approximately equal value, we find no error.

### III.

We also find no error in the trial court's decision to award the wife spousal maintenance for ten years. The award is amply supported by the record and applicable law. *See In re Marriage of Micaletti,* 796 P.2d 54 (Colo.App.1990).

Judgment affirmed.

PIERCE and RULAND, JJ., concur.