COLORADO COURT OF APPEALS
 2016 COA 36
 
 

Court of Appeals No. 14CA2192
Chaffee County District Court No. 07DR75 
Honorable Charles M. Barton, Judge

In re the Marriage of
Cari Amanda Gross, n/k/a Cari Amanda Rohrich,
Appellant,
and
Michael David Gross,
Appellee.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS
Division II
Opinion by JUDGE ASHBY
Dailey and Graham, JJ., concur
Announced March 10, 2016

Lewis Roca Rothgerber, LLP, Kenneth F. Rossman, IV, Denver, Colorado, for Appellant
Michael David Gross, Pro Se
 
¶1       In this post-dissolution of marriage child support dispute, Cari Amanda Gross, now known as Cari Amanda Rohrich (mother), appeals from the district court’s order terminating the child support obligation of Michael David Gross (father) as of the date the parties had agreed that he would seek to relinquish his parental rights to permit the parties’ two children to be adopted by mother’s new husband. We conclude that the court erred in finding that the agreement for father to relinquish his parental rights retroactively ended his duty to support his children. We further conclude that the court erred in applying section 14-10-122(5), C.R.S. 2015, to these circumstances because no change in father’s physical care for the children occurred. We reverse the district court’s order and remand the case for further proceedings.
I. Background
¶2       Mother’s and father’s marriage ended in 2008. Parenting time for their two children was allocated equally between them on an alternating weekly basis, and father was ordered to pay mother $101 in monthly child support. In 2012, mother sought and was granted permission to relocate with the children to South Dakota with her husband. Father’s monthly child support obligation was thereafter increased to $288.
¶3       After the county child support enforcement unit moved in 2013 to again modify father’s child support obligation, the parties mediated and reached an agreement that father would relinquish his parental rights and the children would be adopted by mother’s husband.
¶4       In November 2013, father petitioned the juvenile court under section 19-5-103, C.R.S. 2015, to relinquish his parental rights.[1] His petition was granted May 22, 2014. In June 2014, he moved in the dissolution court to terminate his child support obligation as of the date the parties had agreed that he would pursue relinquishment.
¶5       The district court granted father’s motion and terminated his child support obligation as of July 29, 2013, the date mother had indicated she would accept his proposal to relinquish his parental rights. The court relied on section 14-10-122(5) and ruled that father’s parent-child relationship effectively ended, and mother took sole physical care of the children, when the parties agreed to pursue the relinquishment and adoption scenario.
II. Contentions on Appeal
¶6       Mother raises primarily two arguments for reversal of the district court’s order. First, she contends the court erred in finding that father was "effectively no longer a parent" as of the date he and mother agreed that he would relinquish his rights, and that as a nonparent, he had no duty to support the children from the date of the relinquishment agreement. Specifically, mother argues that father’s nonparent status, and the termination of his duty of support, must be determined under section 19-5-104(5), C.R.S. 2015, of the Colorado Children’s Code, which provides that the final relinquishment order divests the relinquishing parent of legal rights and obligations with respect to a child. Second, and alternatively, she contends that the district court erred in retroactively terminating father’s child support payments under section 14-10-122(5) of the Uniform Dissolution of Marriage Act (UDMA).
¶7       To the extent the district court found that father became a nonparent at any point before the final relinquishment order was entered, we agree that the court erred in doing so. As to mother’s second contention, we further conclude that the court erred by applying section 14-10-122(5) under these circumstances. Accordingly, we reverse the order and remand the case for the court to recalculate the amount of father’s child support arrearages.
III. Analysis
A. Standard of Review
¶8       Our review of the district court’s interpretation and application of the relevant statutes is de novo. See In re Marriage of Paige, 2012 COA 83, ¶9; see also In re Marriage of White, 240 P.3d 534, 536 (Colo. App. 2010) (reviewing de novo whether the trial court applied the correct legal standard when modifying child support under section 14-10-122).
B. Father’s Status As a Parent and Duty to Support His Children Continued Until the Final Relinquishment Order was Entered
¶9       The district court found that after the parties’ agreement for father to relinquish his parental rights and for mother’s husband to adopt the children, mother was solely responsible for supporting the children because father "was effectively no longer a parent," and "[a] non-parent has no duty of support." It further found that father’s "parent/child relationship effectively ended when the parties agreed to relinquishment and adoption." We conclude that the agreement to have father relinquish his rights did not terminate his duty to support the children.
¶10       Relinquishment of parental rights and adoption is governed by sections 19-5-100.2 to -403, C.R.S. 2015, of the Children’s Code. Under the Children’s Code, a parent may voluntarily relinquish parental rights only by petitioning the juvenile court and then participating in such counseling for both the relinquishing parent and the child as the court directs. See § 19-5-103, C.R.S. 2015. A hearing is then required, after which the juvenile court must be satisfied that the parent’s decision is knowing and voluntary and that relinquishment would serve the child’s best interests. § 19-5-103(3), (7)(a). If the court finds that it is in the child’s best interests that relinquishment not occur, it must dismiss the action. § 19-5-103(6).
¶11       Under section 19-5-104(5), the "final order of relinquishment shall divest the relinquishing parent[s] . . . of all legal rights and obligations they may have with respect to the child relinquished." No final relinquishment order was entered until May 2014. Accordingly, the district court erred in finding that father was "effectively no longer a parent", his parent-child relationship "effectively ended," and he therefore had no duty to support his children as of July 29, 2013, the date the parties agreed to pursue relinquishment and adoption. See Abrams v. Connolly, 781 P.2d 651, 656 (Colo. 1989) (noting a parent’s continuing duty to support a child); see also White, 240 P.3d at 539.
C. Termination of Father’s Obligation Under Section 14-10-122(5)
¶12       We further conclude that, in this instance, the court erred in retroactively modifying father’s child support payments under section 14-10-122(5).
¶13       The district court found that (1) the plain language of the statute encompasses the present circumstance whereby mother was assuming sole care of the children because father was relinquishing his parental rights; and (2) had the parties recalculated child support on their own, as section 14-10-122(5) encourages, mother would have been solely responsible for supporting the children because father effectively would have been no longer a parent.
¶14       We conclude that the district court erred on both of these grounds. However, because we conclude that the court erred by applying section 14-10-122(5) to these circumstances, we need not address the likely result had the parties recalculated child support under that statute.
¶15       Under section 14-10-122(1)(a), except as otherwise provided in section 14-10-122(5), the child support provisions of a dissolution decree may be modified on a showing of substantial and continuing changed circumstances, but only as to installments accruing after a motion to modify is filed. See Paige, ¶7. Under this provision, father’s child support payments could have been modified only as of the date he moved to modify.
¶16       Section 14-10-122(5) provides an exception, however:
Notwithstanding the provisions of subsection (1) of this section, when a court-ordered, voluntary, or mutually agreed upon change of physical care occurs, the provisions for child support of the obligor under the existing child support order, if modified pursuant to this section, will be modified or terminated as of the date when physical care was changed.
See Paige, ¶7; White, 240 P.3d at 537-38; see also § 14-10-122(1)(c) (providing that child support payments become a final money judgment when due and unpaid and may not thereafter be retroactively modified, except in the case of a mutually agreed upon change in physical care under section 14-10-122(5)).
 
¶17       A modification of child support due to a change in a child’s physical care applies under the statute only when the provisions of an existing child support order are "modified pursuant to this section." § 14-10-122(5). And, as the district court’s order makes clear, the modification here was based on father’s intent to relinquish his parental rights and have mother’s husband adopt the children. It was not driven or necessitated by a change in the children’s physical care arrangement. Indeed, if the modification had been based on the change in the children’s physical care from shared care to mother’s sole care, father’s child support obligation would not have terminated but rather would have increased under the shared physical care provisions of the UDMA.
¶18       Section 14-10-115(1)(b)(III), C.R.S. 2015, provides that child support under the guidelines is allocated based on the parents’ physical care arrangements for the child. And section 14-10-115(8)(b) then explains how such shared physical care arrangements affect the calculation of child support. This section provides that each parent’s share of the basic child support obligation must be multiplied by the percentage of time the child spends with the other parent to determine which parent will be the obligor for child support purposes. See § 14-10-115(8)(b). Under this statutory scheme, the less time a child spends in the obligor parent’s physical care, the higher that parent’s child support obligation will be to the other parent. See White, 240 P.3d at 536.
¶19       Accordingly, the district court’s application of section 14-10-122(5) to eliminate father’s child support obligation based on the children’s increased amount of time with mother is inconsistent with the shared physical care provisions of the statute. Therefore, we reject the court’s interpretation of section 14-10-122(5) as encompassing the present situation. See White, 240 P.3d at 536 (When interpreting a statute, the court must "consider the statutory scheme as a whole to give consistent, harmonious, and sensible effect to all its parts.").
¶20       The district court’s analysis and interpretation of section 14-10-122(5) is not supported by its additional finding that the parties’ agreement for father to relinquish and mother’s husband to adopt is a substantial and continuing change in circumstances justifying termination of father’s child support payments. Under the statute, a finding of substantial and continuing changed circumstances does not permit modification as of the date of the change. Rather, child support may only be modified as to installments accruing after a motion to modify is filed unless it is being modified based on a change in the child’s physical care, § 14-10-122(1)(a), which, as discussed, was not the situation here.
¶21       Nor is the court’s reasoning bolstered by its findings as to other "relevant factors" it considered, including that there was "no evidence to show that the children [we]re without sufficient resources for their needs" and that the parties’ relinquishment and adoption agreement "was made to spare the children the endless acrimony, bickering, and mutual accusations which have been present throughout th[e] case." Such factors are not relevant to retroactive modification under section 14-10-122(5). And the court did not indicate that it was deviating from statutory requirements because of these factors. Cf. § 14-10-115(8)(e) (providing that child support amount under the statutory schedule is a rebuttable presumption of the amount owed; the court may deviate from that amount if it finds that application of the statute would be inequitable, unjust, or inappropriate; and, if the court does so, it must make findings specifying the reasons for deviating and the amount that would have been owed without a deviation).
IV. Conclusion
¶22       The order is reversed and the case is remanded for the district court to recalculate father’s child support arrearages consistent with the opinions expressed herein.
JUDGE DAILEY and JUDGE GRAHAM concur.

[1] Outside the City and County of Denver, "juvenile court" refers to "the juvenile division of the district court." § 19-1-103(70), C.R.S. 2015.