24CA0243 Parental Resp Conc CMC 10-24-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0243
Weld County District Court No. 18DR163
Honorable Anita Crowther, Judge

---

In re the Parental Responsibilities Concerning C.M.C., a Child,

and Concerning Darcy Lucinda Smith, n/k/a Darcy Lucinda Steckman,

Appellee,

and

Christine Gardner,

Intervenor-Appellant.

---

ORDER AFFIRMED

Division IV
Opinion by JUDGE YUN
Harris and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 24, 2024

---

Cody Knebel, Fort Collins, Colorado, for Appellee Darcy Lucinda Steckman

Law Firm of Brian DeBauche, LLC, Brian DeBauche, Denver, Colorado, for Intervenor-Appellant

¶ 1     This proceeding concerns the child of Darcy Lucinda Smith, now known as Darcy Lucinda Steckman (mother), and Jacob Thomas Crow (father).  The appellant, Christine Gardner (grandmother), is the maternal grandmother of the child.  Grandmother appeals the district court's order denying her motion for grandparent visitation.  We affirm.

¶ 2     Father has not participated in the appeal.

## I.     Background

¶ 3     In September 2018, the court entered permanent orders allocating parental responsibilities as to the child.  Mother later relocated with the child from Colorado to Wyoming, and father's parenting time was modified to two overnights of parenting time every other weekend during the school year and alternating weeks of parenting time during the summer.

¶ 4     In 2022, grandmother intervened in the proceeding and filed a motion to establish a regular schedule of grandparent visitation.  Grandmother requested one weekend per month with the child during the school year and one full week during the summer.

¶ 5     At the hearing, mother argued that court-ordered visitation with grandmother was not in the child's best interests because it

would interfere with her limited weekend parenting time with the child and his two half-siblings during the school year. While mother did not oppose the child having contact with grandmother, she maintained that the child received sufficient visitation with grandmother during father's parenting time given that father and grandmother were on good terms, father lived near grandmother in Colorado, and father often used grandmother for babysitting.

¶ 6 Father did not formally participate in the hearing, although he was called as a witness by grandmother. Father testified that he was in favor of grandmother's request for visitation, but given his already limited parenting time, any court-ordered visitation should be taken from mother's more significant parenting time.

¶ 7 The court denied grandmother's motion, reasoning that it was not in the child's best interests to lose one of the two weekends per month that the child currently spent with mother and his half-siblings. Moreover, the court reasoned that the child was already visiting with grandmother during father's parenting time, and those visits could continue at father's discretion.

## II. Grandparent Visitation

### A. Applicable Version of the Grandparent Visitation Statue

¶ 8    As an initial matter, we address grandmother's assertion that the district court erred by relying on section 19-1-117, C.R.S. 2022, which, shortly before the grandparent visitation hearing, was repealed and recodified with amendments at section 14-10-124.4, C.R.S. 2024.  *See* Ch. 243, secs. 2, 6, 8, § 14-10-124.4, 2023 Colo. Sess. Laws 1302-08.  We conclude that any error was harmless.

¶ 9    Before the repeal and recodification of the grandparent visitation statute, section 19-1-117(2) provided for grandparent visitation if it was in the child's best interests, regardless of a parental determination to the contrary.

¶ 10    Under the new statute, the best interests standard for awarding grandparent visitation still applies.  *See* § 14-10-124.4(4). But, under the new statutory framework, "[i]n determining the best interests of the child for the purpose of grandparent . . . family time, the court shall presume the parental determination regarding grandparent family time is in the best interests of the child," and "[a] grandparent . . . may overcome the presumption upon a showing by clear and convincing evidence that the grandparent

3

family time is in the child's best interests." *Id.* In making these determinations, the court is to consider the statutory best interests factors in section 14-10-124(1.5)(a), C.R.S. 2024. *Id.*

¶ 11 Section 14-10-124.4 represents the codification of *In re Adoption of C.A.*, 137 P.3d 318 (Colo. 2006). In *C.A.*, the Colorado Supreme Court applied the constitutional due process protections afforded by *Troxel v. Granville*, 530 U.S. 57 (2000), to section 19-1-117, and therefore placed the burden on the grandparent to demonstrate by clear and convincing evidence that grandparent visitation is in the child's best interests when there is an objecting parent. *C.A.*, 137 P.3d at 325-38; *see also Troxel*, 530 U.S. at 66 ("[I]t cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.").

¶ 12 Although section 14-10-124.4 was in effect at the time of the August 30, 2023, hearing, the district court applied the repealed section 19-1-117 plus the due process protections of *C.A.* when ruling on grandmother's motion. Yet given that section 14-10-124.4 recodifies section 19-1-117 and incorporates the due

4

process protections of *C.A.* and *Troxel,* the legal standard applicable to grandparent visitation petitions has effectively remained the same. Accordingly, the district court's erroneous application of the old statute was harmless.

### B. Opposing Parental Determinations Concerning Grandparent Visitation

¶ 13 As best as we can discern, grandmother contends that the district court applied the incorrect legal standard and erroneously placed an unfair burden on her to overcome mother's opposition to visitation because father testified in support of grandmother's request for visitation. We are not persuaded.

¶ 14 In reviewing grandmother's remaining contentions, we defer to the district court's factual findings if they are supported by the record, but we review de novo conclusions of law. *See In re Parental Responsibilities Concerning B.J.*, 242 P.3d 1128, 1132 (Colo. 2010).

¶ 15 In *In re Marriage of O'Connor*, 2023 COA 35, ¶ 1, a division of this court recently addressed the presumption that a district court must apply when two fit parents take opposite positions as to a grandparent's petition for court-ordered visitation with a grandchild. Applying *Troxel* and *C.A.*, *O'Connor* held that when

parents take conflicting positions on grandparent visitation, "only the opposing parent's *Troxel* presumption is implicated," and "[t]hus, the grandparent[] must overcome the *Troxel* presumption of the opposing parent" by clear and convincing evidence. *O'Connor,* ¶¶ 4, 32. The division in *O'Connor* reasoned that

> [w]ere [the court] to allow the supporting parent's decision to cancel out the opposing parent's *Troxel* presumption and merely apply the best interests of the child standard, [the] grandparents' argument in favor of visitation would be accorded the same weight as the opposing parent's argument against visitation, thereby depriving that parent of a fundamental right.

*Id.* at ¶ 31.

¶ 16    Here, the district court applied *O'Connor* and therefore required grandmother to overcome mother's opposition to visitation by clear and convincing evidence despite father's general support for visitation.

¶ 17    Grandmother argues that the district court instead should have applied the rule adopted by the Arizona Supreme Court in *In re Marriage of Friedman,* 418 P.3d 884, 892 (Ariz. 2018), providing that when two fit parents disagree on grandparent visitation, their constitutional presumptions cancel each other out, and the best

6

interests of the child standard controls. But *O'Connor*, ¶¶ 13-14, 27-31, specifically rejected *Friedman* as inconsistent with *Troxel*, and we agree with the *O'Connor* division's analysis and do not see any reason to depart from its holding.

¶ 18    Moreover, to the extent that grandmother suggests that the district court erred because she had overcome mother's objection by presenting clear and convincing evidence that court-ordered visitation was in the child's best interests, we disagree. Credibility determinations and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom, are within the district court's sole discretion. *In re Marriage of Lewis*, 66 P.3d 204, 207 (Colo. App. 2003).

¶ 19    Here, the district court placed significant weight on mother's testimony that the court-ordered visitation would reduce her weekend parenting time with the child and his stepsiblings, which was the family's main opportunity to spend quality time together during the school year. Likewise the court found, with record support, that the child visited with grandmother during father's parenting time. And while grandmother directs us to other evidence that she contends supports visitation as being in the child's best

interests, such as her testimony concerning the quality of her relationship with the child, we may not otherwise reweigh the evidence in grandmother's favor because the record supports the district court's findings. *See In re Marriage of Nelson*, 2012 COA 205, ¶ 35 ("[Even where] there is evidence in the record that could have supported a different conclusion, we will not substitute our judgment for that of the district court.").

¶ 20 Nor are we persuaded by grandmother's argument that the district court failed to consider the statutory best interests factors under section 14-10-124(1.5). In assessing the best interests factors, "[t]he trial court need not make specific findings on each and every factor listed in the statute so long as there is some indication in the record that the pertinent factors were considered." *See People in Interest of A.M.K.*, 68 P.3d 563, 566 (Colo. App. 2003). Here, the district court cited the statutory best interests factors and then placed significant emphasis on mother's wishes as to parenting time as well as the child's relationship with mother and his siblings. *See* § 14-10-124(1.5)(a)(I), (III). Thus, we cannot say that the district court failed to consider the child's best interests.

¶ 21    Finally, to the extent that grandmother asserts that the district court somehow violated father's due process rights, she lacks standing to vindicate his rights, and we therefore may not consider such an assertion. *See C.W.B. v. A.S.*, 2018 CO 8, ¶ 19 (recognizing that only "parties aggrieved may appeal" (quoting *City & Cnty. of Broomfield v. Farmers Reservoir & Irrigation Co.*, 235 P.3d 296, 302 (Colo. 2010))); *cf. City of Greenwood Vill. v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 437 (Colo. 2000) ("[P]arties actually protected by a statute or constitutional provision are generally best situated to vindicate their own rights.").

### III.    Attorney Fees

¶ 22    Mother requests an award of her appellate attorney fees on the grounds that grandmother's appeal is without substantial justification and is otherwise frivolous. *See* § 13-17-102, C.R.S. 2024. Although the issue is arguably close, we do not view grandmother's appeal as frivolous such that an award of appellate attorney fees is appropriate. We therefore deny mother's request.

¶ 23    Mother also seeks an award of appellate attorney fees based on the discrepancy in financial resources between herself and grandmother. But appellate attorney fees are only awardable if the

party seeking them states a legal and factual basis for the award, *see* C.A.R. 39.1, and the cases cited by mother do not indicate that attorney fees based on disparate financial circumstances are awardable in a grandparent visitation dispute. Accordingly, mother's request for attorney fees on that basis is also denied.

¶ 24    However, mother is entitled to an award of her appellate costs and may seek those costs in the district court. See C.A.R. 39(a)(2) and (c)(2) (costs are taxed against the appellant if a judgment is affirmed and the "party who wants costs to be taxed . . . must file an itemized and verified bill of costs with the clerk of the trial court").

## IV.    Disposition

¶ 25    The order is affirmed.

JUDGE HARRIS and JUDGE KUHN concur.